# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3780

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| Ralph Joseph Thunder, Jr., | * | of Minnesota. |
| | * | |
| Appellant. | * | |

_____

Submitted: November 15, 2005
Filed: February 22, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Ralph Thunder, Jr., appeals his conviction on three counts of aggravated sexual abuse, *see* 18 U.S.C. §§ 1151, 1153, 2241(c). He asserts that his sixth-amendment right to a public trial was violated when the district judge closed the courtroom during the testimony of the children whom Mr. Thunder allegedly abused. He raises other issues as well, but in view of our holding on his sixth-amendment argument we find it unnecessary to address them. We reverse.

Mr. Thunder was accused of raping his daughter and her half sister and attempting to rape his daughter's aunt. At the time of trial, two of the alleged victims were twelve years old and the other was eleven. The government moved to close the

courtroom to the public under 18 U.S.C. § 3509(e), which allows a court, in some circumstances, to exclude anyone lacking a direct interest in a case from a courtroom when a child is testifying. The trial court granted the government's motion without a hearing and without making any findings to support the closure. Defense counsel objected and renewed the objection each time that the courtroom was cleared for a child's testimony. The courtroom was open to spectators during the rest of the trial.

The government implies in its brief that requiring children to testify in public in this kind of case could only expose them to voyeuristic or prurient interests. We believe that this argument is untenable. We have an open government, and secret trials are inimical to the spirit of a republic, especially when a citizen's liberty is at stake. The public, in a way, is necessarily a party to every criminal case. The sixth amendment speaks in unqualified terms and provides that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. While the Supreme Court has held that the right of access to a criminal trial is "not absolute," *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 606 (1982), the Court has never actually upheld the closure of a courtroom during a criminal trial or any part of it, or approved a decision to allow witnesses in such a trial to testify outside the public eye.

The right to a public trial has long been viewed as "a safeguard against any attempt to employ our courts as instruments of persecution." *In re Oliver*, 333 U.S. 257, 270 (1948). Even the Elizabethan Star Chamber was open to the public. 5 William Holdsworth, *A History of English Law* 156 (3d ed. 1973). "Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole." *Globe Newspaper*, 457 U.S. at 606. An open trial assures that the proceedings are conducted fairly and discourages perjury, misconduct, and decisions based on partiality or bias. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980). Even though most community members do not attend trials, the knowledge that they could and that

others do fortifies the public's confidence in the trials' results. *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 508 (1984). " 'Without publicity, all other checks are insufficient.' " *Oliver*, 333 U.S. at 271 (quoting 1 Jeremy Bentham, *Rationale of Judicial Evidence* 524 (1827)).

While many of the cases dealing with the constitutionality of closing criminal trials address the first amendment rights of the press and public to attend and observe such trials, *see e.g., Globe Newspaper*, 457 U.S. at 598, the "explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). To withstand a defendant's objection to closing a trial or any part of one, an order directing closure must adhere to the principles outlined in *Press-Enterprise*, 464 U.S. at 510, which holds that "the presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *See Waller*, 467 U.S. at 47. Even if the government makes out an interest that would support closure, "the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Id.* at 48.

As we have said, the district court's decision to grant the government's motion to close the courtroom during the alleged victims' testimony followed no hearing and was based on no particular findings. The district judge simply stated that he "certainly [had] no problem with closing the courtroom." This action failed to give effect to the stringent requirements that the Supreme Court's public trial cases have imposed. The district court's order was not narrowly tailored to the advancement of any compelling government interest or, in fact, to any identified interest at all. We therefore conclude that Mr. Thunder's sixth-amendment rights were violated. The government does not argue that the error was harmless, or, indeed, that it even could be, so we do not reach the issue.

We note that the trial judge's actions in this case resulted in what we have called a "total closure" of the courtroom, that is, an exclusion of members of the public and the press. *See United States v. Farmer*, 32 F.3d 369, 371 (8th Cir. 1994). It is therefore not open to the government to assert that it had to show that only a substantial reason, as opposed to an overriding interest, justified the district court's action. *See id.*; *Judd v. Haley*, 250 F.3d 1308, 1319-20 (11th Cir. 2001). Furthermore, the government has pointed to nothing in the record that would allow us to conclude that there was even a substantial reason to close the courtroom in this case. We thus cannot plausibly reconstruct from the record what led the district court to order closure. *Cf. Farmer* at 371-72.

We also observe that § 3509(e) permits the exclusion from the courtroom of all persons, including members of the press, "who do not have a direct interest in the case ... if the court determines on the record that requiring [a] child to testify in open court would cause substantial psychological harm to the child or would result in the child's inability to effectively communicate." We express no view on the constitutionality of this statute. For one thing, we have not had the advantage of full briefing and argument on the issue. Besides, the issue may well disappear from the case altogether depending on what transpires after the judgment of conviction is vacated.

Reversed.

_____